**MATTERHORN, INC., Plaintiff,**

v.

**NCR CORPORATION, Defendant.**

**No. S82–78.**

United States District Court,
N.D. Indiana,
South Bend Division.

May 27, 1983.

William J. Reinke and Patrick J. O'Neil, Barnes & Thornburg, South Bend, Ind., for plaintiff.

John R. Cromer (pro hac vice) and Thomas M. Walz, South Bend, Ind., Hammond, Cromer, Jackson & Borgmann, Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case is presently before the court on defendant's, NCR Corporation, (NCR) Motion to Compel Arbitration and for Stay of Action Pending Arbitration filed March 31, 1983. Both parties have fully briefed the issues and an evidentiary hearing was held April 29, 1983. For the reasons that follow, defendant's motion will be denied.

This action was originally filed on March 1, 1982. On May 20, 1982 defendant NCR filed a Motion for Stay of Action Pending Arbitration which was denied on July 15, 1982 by this court. Defendant's Notice of Appeal from the denial of stay was filed on August 16, 1982, and the appeal is presently pending before the Seventh Circuit. On March 1, 1983, defendant NCR filed a second Motion to Compel Arbitration and for Stay of Action Pending Arbitration which is the motion presently before the court.

Assuming without deciding that the defendant's second motion is proper due to the subsequent filing of the Amended Complaint, this court must consider whether there is a valid arbitration agreement between the parties. Defendant NCR maintains that there is a valid arbitration agreement and is seeking a stay of this action pending arbitration pursuant to 9 U.S.C. § 3 and an order directing plaintiff to arbitrate the issues present in this dispute pursuant to 9 U.S.C. § 4. The plaintiff maintains that there is no binding arbitration agreement and that, at the very least, there is a genuine issue as to the existence of an arbitration agreement, and this court should therefore conduct a jury trial on the issue of arbitration pursuant to 9 U.S.C. § 4.

Section 4 of Title 9, United States Code provides in relevant part as follows:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement, * * * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. * * * *If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.* If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue . . . If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

██ Thus, under Section 4 the court is required to order arbitration to proceed once it is satisfied that the making of the arbitration agreement is not in issue. However, if the existence of the agreement to arbitrate is in issue, the court is required to proceed summarily to trial on that issue. *Great American Trading Corp. v. I.C.P. Cocoa, Inc.,* 629 F.2d 1282, 1288 (7th Cir.1980); see, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

In the case present before the court, the plaintiff entered into a contract on June 9, 1978 for the purchase of a computerized cash register system manufactured by defendant NCR. The contract consisted of a purchase order for a computer system, referred to as a 2160 System and a document entitled Universal Agreement. Mr. James P. Lauer, Secretary-Treasurer of plaintiff Matterhorn, Inc., read the Universal Agreement prior to signing it and was authorized to enter into the contract by the corporation. The Universal Agreement provides in pertinent part on page 1 as follows:

NCR Corporation (NCR) and customer agree that all equipment, programs, and systems and maintenance services obtained from NCR, either directly or indirectly, shall be furnished only under the terms and conditions of this agreement. Unless the context otherwise requires, the term "customer" shall mean the customer listed above.

The terms and conditions of this agreement shall prevail in spite of any contrary printed provision of any purchase order or other form utilized by customer in effecting the furnishing of any equipment, programs or services and any such form, letter or order must state on the face of it:

FURNISHING OF THE EQUIPMENT, PROGRAMS AND/OR SERVICES IS DONE ONLY IN ACCORDANCE WITH AND PURSUANT TO OUR AGREEMENT DATED 6/9/78.

*        *        *        *        *        *

THE TERMS AND CONDITIONS ON THE SUBSEQUENT PAGES ARE PART OF THIS AGREEMENT.

Section One of the Universal Agreement contained on page 2 provides in pertinent part as follows:

1. General— . . . Neither customer nor NCR shall be bound by any order until it is accepted in writing by NCR and at such time both shall be bound and a contract shall exist in accordance with the terms of this agreement, and, to the extent not in conflict, the Order. The Contract, comprised of this agreement and the Order shall constitute the entire agreement of the parties and shall supersede all prior agreements and understandings whether oral or written and all negotiations, letters, other papers and proposals except as attached to the Order or specifically incorporated by reference. Any applicable NCR furnished form signed by Customer shall be a part of the contract.

This Agreement may not be changed or modified in any way subsequent to the date of execution except by an instrument in writing signed by the Customer

and accepted by NCR. . . . This Agreement shall remain in effect until terminated by either party on 30 day's prior written notice. Termination shall not operate to terminate any contract then outstanding.

Section 19 of the Universal Agreement contained on page 7 of the agreement provides in pertinent part as follows:

19. Disputes—Any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement and/or any contract hereafter entered into between NCR and Customer, or the breach thereof, or the furnishing of any equipment or service by the NCR to Customer shall be settled by arbitration. . . .

According to Mr. Lauer's affidavit, the purchase order of June 9, 1978 indicated that the equipment was being sold to the Matterhorn but was actually being sold to Capital Financial Services, a Michigan Corporation which would in turn lease the equipment to the Matterhorn. The delivery of the equipment was delayed and in January 1980, Mr. Lauer contacted NCR and informed its agents that he no longer wished to work through Capital Financial Services and that he could obtain financing through the St. Joseph Valley Bank. According to Mr. Lauer's affidavit, he was informed by NCR's sales representative William T. Bennett that because "the contract has to follow the financing," the old contract of June 9, 1978 would be terminated and a new contract would have to be entered into. In his deposition, Mr. Lauer stated that the order of June 9, 1978 was never retracted or modified by him nor did he request any change in it.

On January 18, 1980, Mr. Lauer submitted a new order to purchase the computer equipment which was originally ordered on June 9, 1978 at a higher price. It was at this point that the dispute arose regarding what constituted the contract. Mr. Lauer stated in his affidavit that the contract consisted of the new purchase order which was in two pages. On the front of each page of the purchase order, in the lower lefthand corner, was the following:

☐ TERMS AND CONDITIONS ON REVERSE SIDE APPLY.

☐ FURNISHING OF EQUIPMENT, PROGRAMS, AND/OR SERVICES IS DONE ONLY IN ACCORDANCE WITH AND PURSUANT TO OUR AGREEMENT DATED: U/A DATE _____

Neither of these boxes was checked on either page of the Customer Copy (3) retained by Mr. Lauer. On the copy submitted by defendant NCR, Records Retention Copy (1), the second box was checked and the date "6–9–78" was written in the blank of both copies. The signature of William T. Bennett and the date 1/18/80 appears on the second page of the purchase order submitted by Matterhorn under the language "PAYMENT OF CASH WITH ORDER AMOUNT ON LINE "P" RECEIVED BY: (SIGNATURE OF SALESPERSON)" on both plaintiff's and defendant's copy. On defendant's Record Retention Copy (1), the signature of Lori Skaar and the date 2–5–80 appears on the second page of the purchase order under the language "ACCEPTED FOR NCR CORPORATION, DAYTON, OHIO 45479 BY: (AUTHORIZED SIGNATURE)." The record is unclear as to when the boxes indicating the Universal Agreement of 6–9–78 were checked, though it was some time after the purchase order was submitted to NCR by Matterhorn.

At the hearing held on April 29, 1983, the defendant argued that the issues presented in this action are subject to arbitration based on Section 19 of the Universal Agreement as quoted above and Section 12 contained on the reverse side of the purchase order. The language contained in Section 12 contains essentially the same language as Section 19 of the Universal Agreement, namely, that any disputes between NCR and a customer are to be submitted to arbitration. The purchase order was prepared and furnished by NCR to its customers and the front page requires an indication that the terms and conditions on the reverse side apply. The logical construction of the document would indicate that if the appropriate box had not been marked, the terms and

**1344**

conditions would not apply. As stated above, the boxes indicating that the terms and conditions on the reverse side apply were not marked, the arbitration clause contained in Section 12 of the purchase order cannot be considered a contract agreement to arbitrate. The agreement to arbitrate must therefore be found, if at all, in Section 19 of the Universal Agreement.

In his affidavit Mr. Lauer stated that based upon the purchase order submitted with no indication at the time he signed the order that the Universal Agreement applied and the representations of NCR's agents at the meeting, it was his understanding that the Universal Agreement entered into June 9, 1978 had been cancelled and did not apply to the purchase order of January 18, 1980. The defendant argues that the Universal Agreement has not been changed by writing subsequent to execution and that inasmuch as Mr. Lauer had read the entire document prior to signing it, he was bound by its terms.

In this case, it is evident from the pleadings and arguments of counsel that the existence of a valid contract containing an agreement to arbitrate is in issue. The court must therefore conduct a trial on the issue of the making of the arbitration agreement in the manner contemplated by 9 U.S.C. § 4. See, *Great American Trading Corp. v. I.C.P. Cocoa, Inc.,* 629 F.2d 1282, 1288 (7th Cir.1980). Accordingly, defendant's Motion to Compel Arbitration and for Stay of Action Pending Arbitration is DENIED. This matter will be set for trial by jury as soon as the calendar of this court permits. SO ORDERED.